

**FILED**
JAN 1 5 2014
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JESUS FABEL DIAZ-PELLEGAUD, | \* | CIV. 13-4043 |
| Movant, | \* | |
| | \* | REPORT and RECOMMENDATION |
| -vs- | \* | |
| UNITED STATES OF AMERICA, | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Petitioner, Jesus Fabel Diaz-Pellegaud ("Diaz-Pellegaud"), is a federal inmate currently incarcerated at the Federal Correctional Institution in Estill, South Carolina. He has filed a Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255.

The Court has taken judicial notice of the file from Diaz-Pellegaud's underlying criminal conviction in the United States District Court, Southern District South Dakota, 4:09-CR-4029-23-LLP and his direct appeal to the United States Court of Appeals for the Eighth Circuit, No. 10-3797. *United States v. Diaz-Pellegaud*, 666 F.3d 492 (8th Cir. 2012). *See, Hood v. United States*, 152 F.2d 431 (8th Cir. 1946) (federal District Court may take judicial notice of proceedings from another federal District Court); *Matter of Phillips*, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); *Green v. White*, 616 F.2d 1054 (8th Cir. 1980) (Court of Appeals may take judicial notice of District Court filings).

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Order dated March 18, 2010.

## FACTUAL AND PROCEDURAL HISTORY

In August, 2009 a Superseding Indictment was filed adding Diaz-Pellegaud to what began as an Indictment originally charging twenty-one co-defendants. Diaz-Pellegaud was charged with Conspiracy to Distribute and Possess with intent to Distribute a Controlled Substance. In September, 2009, a Second Superseding Indictment was filed charging more co-defendants.[1] Eventually, Third and Fourth Superseding Indictments were filed, which included six counts. Diaz-Pellegaud was named in the first three counts of those Indictments, which charged (1) Conspiracy to Distribute Methamphetamine; (2) Conspiracy to Distribute Marijuana; (3) Conspiracy to Conduct a Financial Transaction to Conceal the Proceeds and Promote Unlawful Distribution of Controlled Substances; (4) Unlawful Possession of a Firearm; (5) Aiding and Abetting Possession of a Firearm by a Prohibited Person; and (6) Use of Fraudulent Identification Documents. Diaz-Pellegaud and five of his co-defendants proceeded to trial in August, 2010. Diaz-Pellegaud and four of his co-defendants were convicted; one co-defendant was acquitted. The remaining twenty-one co-defendants entered into pre-trial plea agreements.[2]

On December 13, 2010, the Honorable Lawrence L. Piersol sentenced Diaz-Pellegaud to 360 months imprisonment each on Counts 1 and 2, and 240 months on Count 3, with the terms of imprisonment for all counts to run concurrently. Diaz-Pellegaud was also sentenced to five years of supervised release. Diaz-Pellegaud filed a direct appeal challenging the sufficiency of the evidence to sustain his convictions on all three counts. On January 25, 2012, the Eighth Circuit Court of Appeals affirmed Diaz-Pellegaud's convictions. *United States v. Diaz-Pellegaud*, 666 F.3d 492 (8th Cir. 2012). Diaz-Pellegaud thereafter filed the instant Motion to Vacate, Set Aside or Correct his Sentence.

---

[1] The docket sheet in CR 09-40029 reveals that a total of twenty-seven defendants were charged in the various Indictments.

[2] All of the twenty-one co-defendants who entered into plea agreements pled guilty to Count 1, the methamphetamine conspiracy charge.

In his Motion to Vacate, Diaz-Pellegaud raises three ineffective assistance claims: (1) failure to investigate the Idaho traffic stop and move to suppress evidence obtained as a result of the stop; (2) failure to object at sentencing to the leadership role and dangerous weapon enhancements; and (3) failure to appeal the thirty year sentence imposed. Diaz-Pellegaud attached several exhibits to his Motion. He also filed a Memorandum in Support (Doc. 3) and a Reply to the Respondent's Answer (Doc. 33). In his Reply (Doc. 33) Diaz-Pellegaud asserted that because the criminal docket does not contain his trial counsel's written Objections to the leadership role and dangerous weapon sentencing enhancements, objections were not made despite his trial counsel's and the Government's claim to the contrary. Diaz-Pellegaud moved to compel production of his counsel's written Objections.[3] The Court reviewed trial counsel's written Objections to the Presentence Report and ordered them to be produced to Diaz-Pellegaud and filed in this docket under seal.

## DISCUSSION

### 1. Burden of Proof

In general, to state a claim for relief under 28 U.S.C. § 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing Court did not have jurisdiction to impose sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426-27, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction. *Skinner v. United States*, 326 F.2d 594, 597 (8th Cir. 1964).

### 2. Principles Generally Applicable to § 2255 Petitions

The federal habeas corpus remedy found at 28U.S.C. § 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S.

---

[3]As per custom, trial counsel's written Objections to the Presentence Report were not docketed or filed with the Court but were instead sent directly to the U.S. Probation/Pretrial Services Office and served upon the Government.

178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). A § 2255 cause of action is intended to correct an error which rises to the level of a "fundamental defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427, 82 S.Ct. at 471.

Additionally, a collateral attack pursuant to § 2255 is not interchangeable or substitutable for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In other words, a petitioner is usually precluded from asserting claims in a § 2255 motion that he has failed to raise on direct appeal. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousely v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citations omitted).

Conversely, claims which were raised but rejected on direct appeal may not be re-litigated in a § 2255 petition. *United States v. McGee*, 201 F.3d 1022 (8th Cir. 2000); *United States v. Wiley*, 245 F.3d 750 (8th Cir. 2001). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly addressed in a § 2255 motion. *United States v. Looking Cloud*, 419 F.3d 781, 788-89 (8th Cir. 2005). No procedural default analysis, therefore, is necessary before analyzing ineffective assistance claims.

To successfully maintain a claim for ineffective assistance of counsel, a habeas petitioner must prove his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2052. Because hindsight analysis is problematical, courts "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). Decisions involving trial strategy are therefore "virtually unchallengeable." *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006). Failure to file a motion

4

that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990). It is with these general principles in mind that the claims contained in Diaz-Pellegaud's § 2255 Petition have been considered.

3.   **Analysis**

For the reasons more fully explained below, Diaz-Pellegaud's ineffective assistance claims should be dismissed on the merits:

### A. First Claim for Relief: Failure to File a Motion to Suppress Evidence Obtained as a Result of the Idaho Traffic Stop

Diaz-Pellegaud asserts trial counsel was ineffective for failing to move to suppress evidence obtained as a result of a traffic stop which occurred in Pocatello, Idaho on July 1, 2009. Diaz-Pellegaud was the passenger in the vehicle. Diaz-Pellegaud's co-defendant (Ramirez), who was the driver, moved to suppress the evidence but the motion was denied.[4] In the Affidavit submitted for purposes of this proceeding (Doc. 16), Diaz-Pellegaud's trial counsel explained he reviewed the police reports and the facts surrounding the Idaho traffic stop. He researched the issue and decided not to file what he believed would be a meritless motion. Diaz-Pellegaud has attached several exhibits to his Motion and to his Reply which he asserts prove that had his trial counsel properly investigated, the suppression motion would have been granted and the result of his criminal trial would have been different.

Diaz-Pellegaud attached to his Motion (Doc. 1) EX C, which contains several maps and photos displaying the location of the traffic stop in Pocatello. He also attached EX D, the statement of a private investigator. In ¶ 5 of his statement, the investigator states the passenger side tires were "just on the outside of the 'fog' line . . ." but that "the truck does not 'swerve' or 'drift' out of the lane of travel." In his Memorandum (Doc. 2) Diaz-Pellegaud asserts that because the portion of the

---

[4]*See* CR 09-40029-LLP, Doc. 871. The undersigned presided at the evidentiary hearing and issued a Report and Recommendation to deny the motion with the exception of any statements made after consent was given to search the vehicle or Diaz-Pellegaud admitted the vehicle contained drugs, whichever came first. Judge Piersol adopted the Recommendation. *Id.* Doc. 951.

5

two lane road where the stop occurred was not "clearly marked" pursuant to Idaho Code § 49-637,[5] the vehicle was not required to be driven "as nearly as practicable in a single lane." *Id.* p. 25. In his Reply (Doc. 33), Diaz-Pellegaud asserts the area where the traffic stop occurred was a divided highway and therefore restricted to one-way traffic. Idaho Code § 49-630 is by its own terms, inapplicable to highways "restricted to one-way traffic."[6]

"The failure to make a motion to suppress what is essentially the *only* evidence against a defendant can be sufficient to establish lack of diligence on the part of an attorney if the motion would have succeeded." *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983) (citation omitted, emphasis added).[7] Having considered Diaz-Pellegaud's arguments, the undersigned is not persuaded that they would have been successful at the pre-trial suppression hearing.

---

[5]Idaho Code § 49-637 provides in relevant part:
Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else shall apply:
    (1)    A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made safely.

[6]Idaho Code § 49-630 states in relevant part:
(1) Upon all highways of sufficient width a vehicle shall be driven on the right half of the roadway except as follows:
    \*\*\*
    \*\*\*
    (d)    Upon a highway restricted to one-way traffic.

[7]In his Memorandum (Doc. 2) Diaz-Pellegaud acknowledges that the physical evidence seized as a result of the traffic stop was not the only evidence against him at trial. Several of his co-conspirators testified against him. Diaz-Pellegaud argues the testimony of his co-conspirators to whom he refers as "unsavory witnesses," would not have been enough to convict him. *See* Doc. 2 at p. 35. The Eighth Circuit, however, has "repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." *United States v. Moore*, 411 Fed. Appx. 922, 925 (8th Cir. 2011) (rejecting defendant's claim that in the absence of physical evidence, testimony of "convicted felons who entered into plea agreements with the government and provided testimony in exchange for . . . downward departures" was insufficient to sustain his conviction).

6

The video recording of the July 1, 2009 traffic stop has been reviewed again. Two of Diaz-Pellegaud's basic premises are rejected. First, contrary to the assertions of Diaz-Pellegaud and his investigator, the passenger side tires of the vehicle clearly crossed the fog line on the right side of the two lane road upon which the vehicle was traveling immediately before the traffic stop. Second, the road upon which the vehicle was traveling was "clearly marked." Both the photos attached to Diaz-Pellegaud's Motion and the video illustrate that the road was divided by dashed white lines into two lanes. A solid white line (the fog line) was located on the far right side of the road. According to the Idaho courts, if a driver crosses the fog line "albeit fleetingly" the officer is justified in making a traffic stop. *State v. Slater*, 32 P.3d 685, 690 (Id. App. 2001). Although § 49-630 is the statute cited in *Slater*, the statute relied upon by this Court in Diaz-Pellegaud's case was § 49-637. That statute, unlike § 49-630 applies regardless of whether the road is restricted to one-way traffic. Although *Slater* applied § 49-630 when it determined crossing the fog line provides sufficient justification for a traffic stop, crossing the fog line provides the basis violating other sections of the traffic code as well. *See e.g. State v. Anderson*, 6 P.3d 408, 411 (Id. App. 2000). In that case the defendant likewise argued § 49-630 did not apply.[8] The Idaho Court of Appeals held the traffic stop was justified both because § 49-630 did apply *and* because the defendant's driving over the fog line gave the officer reason to suspect him of inattentive driving in violation of § 49-1401(3).[9] Just as crossing the fog line gave sufficient reason for the stop based on a violation of § 49-1401(3) in *Anderson*, crossing the fog line (along with the caller who complained about Ramirez's erratic driving on the Interstate) gave sufficient reason for the stop based on the violation of § 49-637 in Diaz-Pellegaud's case.

Failure to file a motion that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990). The arguments Diaz-Pellegaud presents to support his claim that trial counsel should have moved to suppress the evidence seized as a result of the July 1, 2009 traffic stop would not have succeeded.

---

[8]The defendant in *Anderson* cited a different exception than does Diaz-Pellegaud.

[9]Inattentive driving occurs when "the conduct of the operator has been inattentive, careless, or imprudent, in light of those circumstances then existing." *Id.*

7

Likewise, the evidence seized as a result of the traffic stop was far from the "only" evidence supporting Diaz-Pellegaud's convictions.[10] Even if the evidence seized as the of the result of the traffic stop could have been suppressed, Diaz-Pellegaud has failed to show the result of his criminal trial would have been different. For these reasons, it is respectfully RECOMMENDED to the District Court that Diaz-Pellegaud's First Claim for Relief be DISMISSED with prejudice and that no certificate of appealability be issued.

### B. Second Claim for Relief: Failure to File Objections to the Presentence Report Regarding Enhancements for Possession of a Firearm and Leadership Role

Diaz-Pellegaud asserts his trial counsel was ineffective for failing to object to the Presentence Report recommendations that he receive (1) a two level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and (2) a four level enhancement for an organizer or leadership role under U.S.S.G. §3B1.1(a). Diaz-Pellegaud asserted that because the docket did not contain trial counsel's written objections, no objections were made. A review of the entire record, however, reveals that written objections were made to both enhancements about which Diaz-Pellegaud complains. The sentencing transcript has been reviewed. Judge Piersol did not impose the enhancement for possession of a firearm. *See* Sentencing Transcript, Doc. 1114 at p. 5.

Trial counsel filed a written objection to the enhancement regarding the leadership role. Judge Piersol considered, but rejected the objection and imposed the four level enhancement. *See* Sentencing Transcript, Doc. 1114 at p. 6. The end result was Diaz-Pellegaud's base offense level was 38, with 4 points added for the leadership role for a total of 42. The sentencing guidelines for an offense level of 42 is 360 months to life. Judge Piersol sentenced Diaz-Pellegaud to 360 months–the very bottom of the sentencing guidelines.

---

[10] The Eighth Circuit Court of Appeals rejected Diaz-Pellegaud's challenge to the sufficiency of the evidence. Although the Court's decision mentions the marijuana found during the Idaho traffic stop, the Court primarily relied upon the other "detailed evidence" including the testimony of Diaz-Pellegaud's co-conspirators and a drug ledger found in Sioux Falls, South Dakota. *United States v. Diaz-Pellegaud*, 666 F.3d 492, 499 (8th Cir. 2012).

8

Diaz-Pellegaud's ineffectiveness claim regarding failure to file written objections fails because objections were filed. Diaz-Pellegaud claims his counsel was nevertheless ineffective for failing to object to the imposition of the leadership role enhancement. Counsel's objection to this enhancement was based upon his assertion that it was not supported by the evidence.

Diaz-Pellegaud also bases his ineffectiveness claim regarding the leadership role enhancement in part on the premise that he was convicted on two separate drug conspiracy charges, and there were not five or more "participants" in either of the drug conspiracies for which he was convicted, as required to impose the four level leadership role enhancement pursuant to U.S.S.G. § 3B1.1(a). This claim is meritless.[11]

"One does not have to have contact with all of the other members of a conspiracy to be held accountable as a conspirator. A single conspiracy may be found when the defendants share a common overall goal and the same method is used to achieve that goal, even if the actors are not always the same." *United States v. Bascope-Zurita*, 68 F.3d 1057, 1061 (8th Cir. 1995). Regardless of how many testified or identified him at trial, more than five participants were convicted on the methamphetamine conspiracy charge. That the record does not contain evidence of direct contact between every convicted co-conspirator and Diaz-Pellegaud is irrelevant to whether every convicted co-conspirator was a "participant" or whether Diaz-Pellegaud was an organizer or leader for purposes of U.S.S.G. § 3B1.1(a). Diaz-Pellegaud's claim that there were not more than five participants on either count of conviction fails.[12]

---

[11] Although only five (Diaz-Pellegaud and four co-defendants) were found guilty at trial, twenty-one co-conspirators entered into pre-trial plea agreements in which they pled guilty to the methamphetamine conspiracy charge.

[12] Because there were five or more participants in the methamphetamine conspiracy, the basic premise of Diaz-Pellegaud's "double counting" argument likewise fails. In essence, Diaz-Pellegaud asserts that because the drug quantities and the number of participants from both his counts of conviction were combined for sentencing purposes, the prohibition against "double counting" was violated. "Double counting occurs when 'one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been accounted for by application of another part of the Guidelines.'" *United States v. Hipenbecker*, 115 F.3d 581, 583 (8th Cir. 1997) (citation omitted). Double counting is inapplicable here.

Finally, Diaz-Pellegaud's leadership role enhancement in the conspiracy is supported by the evidence. Diaz-Pellegaud arranged for the transportation of both marijuana and methamphetamine into the United States from Mexico via railcar, and for the deposit of the drug proceeds into specified bank accounts. The Eighth Circuit explained Diaz-Pellegaud personally sold and distributed marijuana and methamphetamine, and recruited Verdugo-Galaviz to both (1) sell his drugs for him and (2) to recruit others to do the same. The Eighth Circuit described Diaz-Pellegaud's role in the conspiracy as "central." *United States v. Diaz-Pellegaud*, 666 F.3d 492, 499 (8th Cir. 2012). At sentencing, Judge Piersol indicated he considered Diaz-Pellegaud to be a leader of the conspiracy. Sentencing Transcript, Doc. 1114 at p. 8. Diaz-Pellegaud's counsel objected to the leadership role enhancement as unsupported by the evidence. "Counsel was not deficient simply because his efforts were unsuccessful." *United States v. Medrano*, 2007 WL 2198078 (N.D. Tex.). at *3. *See also Walker v. United States*, 2010 WL 7361270 (S.D. Ia. ) at *7 ("because counsel filed meaningful, though ultimately unsuccessful arguments and objections [to PSR] on his behalf, the defendant received constitutionally effective counsel at sentencing.") (citation omitted).

Trial counsel filed objections to the sentencing enhancements about which Diaz-Pellegaud complains. The objection to the four-level leadership role enhancement was denied. That the objection was denied, however, does not render counsel's representation ineffective. For all of these reasons, it is respectfully RECOMMENDED to the District Court that Diaz-Pellegaud's Second Claim for Relief be DISMISSED with prejudice and that no certificate of appealability be issued.

### C. Third Claim for Relief: Failure to Appeal Thirty Year Sentence

Diaz-Pellegaud's final claim is that his trial counsel was ineffective for failing to appeal his 360 month sentence. As explained above, Diaz-Pellegaud's adjusted offense level (incorporating the four level enhancement for the leadership role) was 42. His criminal history category was I. The advisory sentencing guideline range for Counts 1 and 2 was **360 months to life**. A sentence at the bottom of the guidelines range is presumed to be reasonable. *Rita v. United* States, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); *United States v. Valadez*, 573 F.3d 553, 556 (8th Cir. 2009). Because a sentence at the bottom of the advisory guidelines is presumed to be reasonable, an appeal

of Diaz-Pellegaud's sentence would have had little or no chance of success. Failure to file a motion that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990). For all of these reasons, it is respectfully RECOMMENDED to the District Court that Diaz-Pellegaud's Third Claim for Relief be DENIED and that no certificate of appealability be issued.

### 4. **Evidentiary Hearing and Certificate of Appealability**

If the motion, files and records of the case conclusively establish that the Petitioner is not entitled to relief, the Court is not required to conduct an evidentiary hearing. *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012). There is no need for an evidentiary hearing in this case because it is clear from the record that the motion that Diaz-Pellegaud has not raised a claim cognizable under 28 U.S.C. § 2255.

When the district court has denied a motion under 28 U.S.C. § 2255, the movant may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if a "court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Diaz-Pellegaud has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability should likewise be denied.

### CONCLUSION and RECOMMENDATION

For the reasons more fully explained above, it is **RECOMMENDED** to the District Court:

(1) That Diaz-Pellegaud's Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 1) be DENIED with prejudice and that no Certificate of Appealability be issued;

(2)	That the Government's Motion to Dismiss (Doc. 21) be GRANTED;

(3)	That Diaz-Pellegaud's Motions for Immediate Release (Doc. 33) and Motion to Expedite Immediate Release (Doc. 34) be DENIED as moot.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this 15 day of January, 2014.

BY THE COURT:

John E. Simko
United States Magistrate Judge